UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK GROUP FOR PLASTIC
SURGERY LLP,

                      Plaintiff,

          -v-

ANTHEM BLUE CROSS, *et al.*,

                    Defendants.

20-CV-4234 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff New York Group for Plastic Surgery LLP brings this action against Defendants

Anthem Blue Cross and Anthem, Inc. (collectively, "Anthem"), alleging that Anthem was

unjustly enriched when it inadequately reimbursed Plaintiff for a surgery that Plaintiff's surgeons

performed.  (Dkt. No. 35 at ¶¶ 33–37 ("Second Am. Compl.").)  Plaintiff also requests that

Anthem produce financial records that allegedly demonstrate that Anthem under-reimbursed

Plaintiff.  (Second Am. Compl. at ¶¶ 38–42.)  Anthem moves to dismiss the second amended

complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. Nos.

38–41.)  For the reasons that follow, Anthem's motion is granted.

## I.  Background

Plaintiff is a physician practice group.  (Second Am. Compl. ¶ 14.)  Plaintiff's surgeons,

Dr. Salzburg and Dr. Jordan, who are out-of-network providers, performed a thoracodorsal artery

perforator flap procedure on the patient's right breast and a breast reconstruction of the patient's

left breast.  (Second Am. Compl. ¶ 19.)  After performing the surgeries, Plaintiff submitted

invoices to Empire Blue Cross Blue Shield, owned by Anthem, on behalf of Dr. Salzburg for

about $100,000, on behalf of Dr. Jordan for about $97,000, and on behalf of an assistant surgeon

for about $25,000.  (Second Am. Compl. ¶¶ 4, 20–22.)

1

The patient's health benefits plan (the "Plan")[1] defines the reimbursement amount for out-of-network providers.  (Second Am. Compl. ¶ 24.)  That amount is called the "Allowed Amount," which reflects either a negotiated amount between the insurance company and the provider or a customary charge.  (Second Am. Compl. ¶ 24.)  In an October 13, 2017 letter to Plaintiff, which was not attached to the second amended complaint, Anthem stated:  "Out of network claims are paid on the Allowed mount, which is the customary amount.  The Allowed Amount for [Plaintiff's] claim was based on the 90th percentile of Fair Health."  (Second Am. Compl. ¶ 27.)  Plaintiff was ultimately reimbursed $13,800.82 for Dr. Salzburg's services, $10,386.18 for Dr. Jordan's services, and $4,448.96 for the assistant surgeon's services.  (Second Am. Compl. ¶¶ 20–22.)  According to Plaintiff, this was not a reimbursement based on the 90th percentile of Fair Health.  (Second Am. Compl. ¶ 28.)

On August 20, 2020, Anthem filed a motion to dismiss the first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 19–22.)  The Court granted Anthem's motion, concluding that Plaintiff's complaint failed to state a claim for breach of contract under New York law.  (Dkt. No. 34.)  The Court granted Plaintiff leave to file a second amended complaint, which Plaintiff filed on February 19, 2021, alleging that Anthem had been unjustly enriched and requesting an action for accounting.  (Dkt. No. 35.)  On April 5, 2021, Anthem filed a motion to dismiss the second amended complaint.  (Dkt. Nos. 38–41.)

---

[1] Plaintiff did not attach the Plan, but Anthem did so in its motion to dismiss the second amended complaint.  (*See* Dkt. No. 40-1.)  Because the Plan was incorporated by reference in the complaint, the Court may consider this document.  *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

## II.     Discussion

This Court has diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship — Plaintiff's partners are both citizens of New York, while Defendants are citizens of Indiana, California, and Texas — and the matter in controversy exceeds $75,000, exclusive of interest and costs.  (Second Am. Compl. ¶ 11.)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The Court must accept as true all well-pleaded factual allegations in the complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *Goonan v. Fed. Rsrv. Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Anthem seeks to dismiss the second amended complaint under three theories: (1) neither Anthem Blue Cross nor Anthem, Inc. is a proper party to this action; (2) Plaintiff's claims are time-barred; and (3) Plaintiff fails to state a claim for unjust enrichment or a claim for an accounting.  (Dkt. No. 39.)   The Court need only address the third theory.

### A.     Unjust Enrichment

Anthem argues that Plaintiff fails to state a claim for unjust enrichment because nothing in the second amended complaint sufficiently alleges how Anthem benefitted from Plaintiff's

3

performance of medical services on the patient, as required under New York law.  (Dkt. No. 39 at 8–11.)  Plaintiff counters that the benefit Anthem received *was* Plaintiff's rendering of services to its insured patient.  (Dkt. No. 44 at 9–13.)  The Court agrees with Anthem.

To establish a claim for unjust enrichment under New York law, a plaintiff must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  Courts in this circuit and New York state courts have consistently held that "where the services were not provided at the behest of the plaintiff but rather by the patient, dismissal of the quasi-contract causes of action against the insurer defendant is appropriate."  *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, No. 17 Civ. 1674, 2021 WL 1224883, at *14 (E.D.N.Y. Mar. 31, 2021); *see also MC1 Healthcare, Inc. v. United Health Grp., Inc.*, No. 17 Civ. 1909, 2019 WL 2015949, at *10 (D. Conn. May 7, 2019) ("[P]roviders cannot bring unjust enrichment claims against insurance companies based on the services rendered to insureds."); *Josephson v. United Healthcare Corp.*, No. 11 Civ. 3665, 2012 WL 4511365, at *5 (E.D.N.Y. July 24, 2013) ("[The complaint] fails to state a basis for recovery because Plaintiffs' services were performed at the behest of his patients, not United."); *Pekler v. Health Ins. Plan of Greater N.Y.,* 888 N.Y.S.2d 196, 198 (2d Dep't 2009) ("As the complaint alleges that medical services were performed by the plaintiff doctors at the behest of their patients, no claim in quantum meruit can be asserted against the defendants.").

To the extent that Plaintiff argues that Anthem was required by law, under the Women's Health and Cancer Rights Act ("WHCRA"), to provide full coverage of the breast reconstruction surgery in this case (Dkt. No. 45 at 3), that is belied by the text of the WHCRA, its legislative

history, and case law interpreting the Act.  The WHCRA requires that insurance companies

provide coverage for:

> "(1) all stages of reconstruction of the breast on which the mastectomy has been
> performed;
> (2) surgery and reconstruction of the other breast to produce a symmetrical appearance;
> and
> (3) prostheses and physical complications of the mastectomy, including lymphedemas."

29 U.S.C. § 1185b(a).  But "nothing in the text or legislative history of the WHCRA suggest[s] a

patient is entitled to '100% of the amount billed by her surgeon, regardless of the other terms and

conditions of the Plan,' because the WHCRA only states that 'coverage' must be provided."

*Avenue Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield,* No. 19 Civ. 9761, 2021 WL

665045, at *9 (S.D.N.Y. Feb. 19, 2021) (quoting *Krauss v. Oxford Health Plans, Inc.*, 418 F.

Supp. 2d 416, 427 (S.D.N.Y. 2005), *aff'd*, 517 F.3d 614 (2d Cir. 2008).  There is no allegation

that Anthem failed to provide, as the WHCRA requires, "coverage" for the patient's surgery.

### B.    Claim for Accounting

Anthem argues that Plaintiff fails to state a claim for an accounting (1) because Plaintiff

fails to allege any facts sufficient to find that a special relationship between Plaintiff and Anthem

existed, as required under New York law (Dkt. No. 39 at 12), and (2) because another adequate

remedy at law — namely, its claim for unjust enrichment — exists so the claim for accounting is

duplicative (Dkt. No. 39 at 13–14).  Plaintiff counters that the second amended complaint does

provide sufficient allegations of a confidential or fiduciary relationship, supporting an inference

that Plaintiff "entrust[ed] to the defendant[s] money . . . and defendants induc[ed] plaintiff to

continue working for defendants without a written contract based on trust."  (Dkt. No. 44 at 16.)

Furthermore, Plaintiff contends that the accounting claim is not duplicative of the unjust

enrichment claim because only the accounting claim seeks the production of financial records. (Dkt. No. 44 at 16.)  Again, the Court agrees with Anthem.

"Under New York law, the elements of a claim for an equitable action for an accounting are: (1) a relationship of a fiduciary or confidential nature; (2) money or property entrusted to the defendant imposing upon him the burden of accounting; (3) the absence of an adequate legal remedy; and (4), in some cases, a demand for an accounting and a refusal." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 290 (S.D.N.Y. 2017) (quotation marks omitted). A "confidential relationship" in this context means "a relationship which induced plaintiff to entrust defendant with property or money." *KJ Roberts & Co. Inc. v. MDC Partners Inc.*, No. 12 Civ. 5779, 2014 WL 1013828, at *12 (S.D.N.Y. Mar. 14, 2014) (quotation marks omitted). "However, a conventional business relationship, without more, is insufficient to create a fiduciary relationship . . . . [A] plaintiff must make a showing of special circumstances that could have transformed the parties' business relationship to a fiduciary one." *AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 21 (2nd Dep't 2008) (quotation marks omitted).

Here, Plaintiff fails to allege the existence of a fiduciary or confidential relationship between it and Anthem.  Its reliance on *AHA Sales, Inc. v. Creative Bath Prod., Inc.* is misplaced, as that case demonstrates the high threshold for establishing such a relationship under New York law, even at the motion to dismiss stage.  In *AHA Sales*, the Appellate Division concluded that the existence of a fiduciary relationship had been established because the complaint "contains allegations that [defendants] induced the plaintiff to continue serving as its sale representative for many years, for the most part without a written contract, by representing that it could trust [defendants]."  58 A.D.3d at 22.  Moreover, at defendants' insistence, "the plaintiff refrained from forming other contractual relationships with [defendants'] competitors,"

6

and defendants "demanded that the plaintiff render additional services outside of the parties'

purported agreement." *Id.*  Plaintiff in this case has alleged nothing more than an arms-length

business transaction between itself and Anthem, so its claim for accounting fails.

**III.    Conclusion**

For the foregoing reasons, it is hereby ORDERED that Anthem's motion to dismiss is

GRANTED.

The Clerk of Court is directed to close the motions at Docket Number 38 and to close this

case.

SO ORDERED.

Dated: February 22, 2022
       New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge